# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET ELAINE HIZAR,<br><br>       Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>       Defendant. | Case No.: 1:09-cv-01020-JLT<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF JANET ELAINE HIZAR AND AGAINST DEFENDANT MICHAEL J. ASTRUE |

**BACKGROUND**

Plaintiff Janet Elaine Hizar ("Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").

**FACTS AND PRIOR PROCEEDINGS[1]**

On April 5, 2006, Plaintiff filed an application for DIB alleging that she suffered from a disability with a claimed onset date of December 30, 2004. See AR at 11, 97. After her application for benefits was denied by the agency, Plaintiff requested a hearing before an Administrative Law

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Judge ("ALJ").  On February 24, 2009, the ALJ issued a decision denying benefits.  Id. at 6-16.  Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  Id. at 16.  On April 15, 2009, the Appeals Council affirmed and it became the decision of the Commissioner.  Id. at 1-3.

Hearing Testimony

At the administrative hearing held on December 10, 2008, Plaintiff testified that she had a doctorate in psychology and was licensed as a marriage and family therapist specialist.  AR at 40-41.  She stated that she was in private practice in Orange, California, from 1981 until December 2000 and served on hospital staffs as well.  Id. at 41.

Plaintiff testified that she moved to Kern County in early 2001 and went to work first at Positive Attitude foster care agency as a clinical supervisor, supervising social workers.  AR at 42.  She stated that she was also an adjunct professor at California State University, Bakersfield.  Id.

Plaintiff recounted that she went to work for Kern County Mental Health in October 2002.  AR at 42-43.  She stated that part of her work for the County involved reorganizing the crisis stabilization unit.  Id. at 44.

Plaintiff claimed that her disability onset began on December 30, 2004, after she suffered an eye injury from "face work" that she stated was related to a family history of skin cancer.  AR at 44-45.  She stated that without her permission, the doctor injected her with botox which "screwed up" her eye.  Id. at 45.  She stated that as a result of the botox injection she couldn't see and suffered a lot of pain including "burning" and "pin prick" type pain.  Id.

Plaintiff testified that this injury required her to take a lot of time off work.  AR at 45.  In fact, she stated that she didn't work for virtually all of 2005.  Id. at 46.  She claimed that doctors recommended that she not work because of the injury to her eye.  Id. at 45.  She stated that she felt that the injury made her look "ugly" and this affected her motivation to return to work.  Id. at 46.

Plaintiff acknowledged that she earned about $ 4,800 in income in 2005 despite not working.  AR at 46.  She claimed that this income was from back pay owed from 2004 and/or withdrawals from retirement accounts.  Id.  Under questioning, Plaintiff admitted that she wrote in a hospital preregistration form in 2007 and in an application filed with the Social Security agency that she

worked out of the home as a psychologist.[2]  AR at 54.  However, she testified that this was not true.  Id.  She stated that she provided this false information out of "pride."  Id.

Plaintiff testified that she went back to work for the first three months of 2006.  AR at 47.  She stated that she only worked part-time.  She related that the injury to her eye caused watering and burning and made it difficult for her to use a computer for more than about 15 minutes.  Id. at 49.  She stated that because she needed to use the computer to do her job effectively, and because she didn't believe that she could do her job well, she "medically" resigned from her county job in March 2006.  Id. at 50.

Plaintiff testified that she was embarrassed and humiliated that her eye injury prevented her from working.  AR at 50.  She described having bouts of depression.  Id.  She stated that she felt low and stayed in bed.  Id.  Plaintiff admitted that, although she mentioned her depression in addition to her eye injury when she applied for DIB, she declined to be examined by an agency psychiatric consultant.  AR at 51.  She testified that she declined because she didn't want to believe that she was emotionally or psychologically "messed up" and, because, being a psychologist, she was embarrassed to think that she might have a psychological impairment.  See id.   However, Plaintiff stated that she was taking Xanax to deal with anxiety during this time.  Id. at 52.  Plaintiff testified that in February 2008 she decided to get psychiatric help after attempting suicide.  AR at 52.  She described being treated by a Dr. "Baleedy" who prescribed "all kinds of stuff."  Id.

Plaintiff stated that she felt bad that she could not work and worried that she might die penniless.  AR at 53.  She stated that but for her eye injury she would never have quit working.  Id.  She believed that her job with Kern County was a "great job."  Id.  She recounted that now she spent a lot of time in her pajamas and didn't leave home very much because she felt ashamed and wanted to avoid people.  Id.   She described having trouble sleeping and concentrating and stated that she

---

[2] In his decision, the ALJ made no reference to the "application" filed with "us." Instead he referenced the 2007 hospital pre-registration and another form Plaintiff completed for a doctor in December 2004.  See AR at 13, 203.  Plaintiff did not deny that she indicated in an agency "application" that she worked out of the home but it is not clear from the record what "application" the ALJ is referring to.  The DIB application in the record contains no such statement. See id. at 97-98.  In any event, the record shows that in at least two documents, one filed with a doctor in December 2004, and in a September 2007 hospital pre-registration form, Plaintiff indicated that she was self-employed and worked out of the home.  Id. at 203, 384.

3

cried a lot. Id. She claimed that she felt that she had lost the best part of herself and had fallen into a black hole. Id.

Plaintiff acknowledged that in addition to the cosmetic "face" surgery that resulted in her eye injury, she had a "tummy tuck." AR at 55. She stated that this surgery resulted in a law suit which settled out of court for $18,000. Id.

Plaintiff testified that she no longer had any hobbies and spent most of her time watching television. AR at 56. She said that she used to work in the garden but stopped after she "screwed up" her back. Id. She described her injury as a "slipped disc" and stated that this injury required surgery. Id. Because of this injury, she stated that she could no longer vacuum. Id.

Plaintiff testified that she didn't drive much but stated that she drove to the administrative hearing. AR at 57. She estimated that she drove to the grocery store every two or three weeks, but said that her son helped her carry groceries from the car to the house. Id. She stated that she drove to doctor appointments as well. Id. Plaintiff testified that in October 2008 she traveled to Las Vegas for her daughter's wedding. AR at 56. She stated that she rented a car for the trip but said that her son drove. Id. at 56-57. She stated that her driver's license was renewed in 2008 for five years with a restriction to driving only if she wore glasses. Id. at 59.

Plaintiff admitted that with glasses her vision was corrected to 20/20. AR at 58. Nevertheless, she maintained that she suffered burning and pin-prick pain in her eyes still. Id. at 57. She testified that a doctor told her that she suffered permanent nerve damage to her eye that can't be fixed. AR at 58.

Relevant Medical Evidence

Because Plaintiff's claim of error is limited to the ALJ's findings concerning the severity of her psychological impairments, in particular depression, the Court recounts only medical evidence related to treatment for this problem.

Dr. A.M. Khong, a non-examining agency consultant filed a "Case Analysis" in January 2007. In it, the doctor noted that Plaintiff gave conflicting accounts as to the severity of her psychological condition. See AR at 324. At one point she told Dr. Khong that she believed that her "anxiety" prevented her from working. Id. However, at another point she denied having a severe

psychological impairment that prevented her from working. Id. In addition, she declined to be examined by a consultative mental specialist. Id. Nevertheless, Dr. Khong wrote that evidence "suggests significant psychi overlay." Id. at 325.

In March 2007, Dr. H.T. Unger, another non-examining consultant, completed a Psychiatric Review Technique form. Dr. Unger noted "anxiety related disorders" (AR at 326) but he concluded that there was insufficient evidence in the medical record to determine if this impairment was severe. See id. at 336, 338.

Treatment notes from Dr. Leo Langlois, described by Plaintiff as a "pain" doctor, reported no psychological problems until April 2008. See AR at 394-402. However, beginning in April 2008, Dr. Langlois noted that Plaintiff reported that she felt depressed and was being treated by a psychiatrist. See id. at 386-392.

Beginning in February 2008, Plaintiff was treated for depression at the Truxtun Psychiatric Medical Group. Notes from the treating doctor reveal a diagnosis of major depressive disorder ("MDD") in February 2008. See AR at 378. The doctor wrote that Plaintiff appeared sad, tired and cried. Id. at 376. He believed that Plaintiff's depressive disorder caused problems with concentration and described her as having feelings of hopelessness and suicidal thoughts. Id. at 377.

Notes from March 2008 describe Plaintiff as staying home in her pajamas. AR at 373. Also, Plaintiff told the doctor that she attempted suicide in 1996 because of marital problems. Id. In March 2008, a doctor at the Truxtun Medical Group completed a mental Residual Functional Capacity ("RFC") form.[3] He indicated that Plaintiff's depression caused "marked limitations" in her ability to: (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities on schedule and maintain attendance in a regular and punctual manner, and; (4) complete a normal workday and work week without interruptions due to psychologically based symptoms while performing at a consistent pace without an unreasonable number and length of rest periods. AR at 357-58.

In April 2008, Plaintiff told the doctor that her medication, in particular Cymbalta, was

---

[3] Although not clear, it appears from the signature block that the RFC was completed by Plaintiff's treating physician.

5

working and she felt better. AR at 370. In response, the doctor ordered an increase in the Cymbalta dosage. Id. Progress notes from May 1, 2008, recorded no change in Plaintiff's mental status. AR at 369. On May 29, 2008, the doctor wrote that Plaintiff had good results from the Cymbalta but reiterated a diagnosis of depressive disorder. AR at 368.

On June 5, 2008, Plaintiff told the doctor that she went out with a friend and had a good time. AR at 367. She told the doctor that she slept "okay." Id. In July 2008, Plaintiff reported that she was not having any side effects from her medications and was sleeping well. AR at 366. Nevertheless, she reported that she was "having a lot of problems." Id. The doctor described Plaintiff's affect as "bright" and her mood as "congruent." Id. Plaintiff told her that she stayed home most of the time still but cried less. Id. The doctor reaffirmed a diagnosis of MDD. Id.

In August 2008, Plaintiff told the doctor her medications were working and her mood was "improved." AR at 364. However, in September 2008, Plaintiff told the doctor she was not doing well and described her mood and sleep as "up and down." Id. at 363. In October 2008, Plaintiff told the doctor that she traveled to Las Vegas to her daughter's wedding but she told the doctor also that her Cymbalta was not working. AR at 361. In November 2008, Plaintiff told the doctor she slept better and stated that the Cymbalta was working "good." AR at 360. The doctor noted that Plaintiff seemed alert and described her as "improving." Id.

ALJ Findings

As a preliminary matter, the ALJ determined that Plaintiff met the insured status through December 31, 2011. AR at 11. Next, the ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. First, he determined that Plaintiff had not engaged in substantial gainful activity since her claimed onset date of December 30, 2004. AR at 14. Second, he found that Plaintiff had the following severe impairment: status post L4-L5 hemilaminectomy with resection of synovial cyst with residual pain. Id. Third, the ALJ determined that Plaintiff did not have an impairment, or a combination of impairments, that met or exceeded the level required under agency guidelines for presumed disability. Id.

Fourth, the ALJ determined that Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, and stand, walk, and sit six hours in an eight-hour workday.

1  AR at 13.  Based on his RFC assessment, the ALJ determined that Plaintiff could perform her past
2  relevant work as a psychologist  Id. at 15.  As a result, the ALJ determined that Plaintiff was not
3  disabled as defined by the Act.  Id. at 16.

## SCOPE OF REVIEW

5       Congress has provided a limited scope of judicial review of the Commissioner's decision to
6  deny benefits under the Act.  When reviewing the findings of fact, the Court must determine whether
7  the Commissioner's decision is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial
8  evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but
9  less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is
10 "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
11 Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence
12 that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler,
13 760 F.2d 993, 995 (9th Cir. 1985).  The Court must uphold the determination that the claimant is not
14 disabled if the Commissioner applied the proper legal standards, and if the findings are supported by
15 substantial evidence.  *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir.
16 1987).

## REVIEW

18      In order to qualify for benefits, a claimant must establish that he is unable to engage in
19 substantial gainful activity due to a medically determinable physical or mental impairment which has
20 lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §
21 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity
22 that he is not only unable to do his previous work, but cannot, considering his age, education, and
23 work experience, engage in any other kind of substantial gainful work which exists in the national
24 economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the
25 claimant to establish disability.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).
26      In an effort to achieve uniformity of decisions, the Commissioner has promulgated
27 regulations which include the five-step sequential disability evaluation process described above.  20
28

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4]  Plaintiff raises only one claim on appeal.  She challenges the ALJ's determination at step two of the sequential evaluation where he found that Plaintiff's depression "does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere."  AR at 13; Doc. 14 at 6-11.

**DISCUSSION**

1. <u>The ALJ improperly discounted the uncontradicted opinion of a treating psychiatrist</u>

Plaintiff contends that the ALJ erred in determining that Plaintiff's depressive disorder was "nonsevere" at step two of the sequential evaluation process.  In doing so, she asserts that the ALJ improperly discounted the opinion of her treating psychiatrist without providing "clear and convincing reasons" supported by substantial evidence in the record.  (<u>See</u> Doc. 14 at 10-11).

With regard to a step two determination, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  <u>See</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original).  Thus, "'[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  433 F.3d at 687.  The court noted that "[s]tep two . . . is 'a de minimis screening device [used] to dispose of groundless claims' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'"  <u>Id</u>.

Treatment notes from the Truxtun Psychiatric Medical Group show that from February 2008 through November 2008, Plaintiff was treated for a "major depressive disorder."[5]  <u>See</u> AR at 360-78. In March 2008, shortly after Plaintiff was diagnosed with "major depressive disorder" and began

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

[5] The administrative hearing was held on December 10, 2008.  AR at 36.  As a result, the medical record does not contain evidence after Plaintiff's November 2008 treatment at the clinic.

treatment at the Truxtun Clinic, a doctor completed a mental RFC Assessment form.[6]  AR at 357-59. In this document, the doctor indicated that Plaintiff's mental impairment caused marked limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal work day and work week without interruptions from psychologically based symptoms, and; perform at a consistent pace without an unreasonable number and length of rest periods.  Id. at 358-59.

The ALJ accorded this opinion "little weight."  AR at 12-13.  In particular, he found that the mental RFC Assessment was completed in March 2008, just one month after Plaintiff began seeking formal treatment at the Truxtun Clinic.  Likewise, he observed that treatment notes from later visits from the clinic, particularly a note from November 2008, demonstrated that Plaintiff "was sleeping better, was alert, had improved mood, and had no homicidal or suicidal ideation."  Id.  In addition, the ALJ based his rejection of this opinion, and his conclusion that Plaintiff's depression was "not severe", on his assessment of Plaintiff's functional capacity.  The ALJ considered Plaintiff's activities of daily living, her social functioning, her concentration, persistence and pace and her episodes of decompensation.  AR at 13; see 20 C.F.R. § 416.920(c)(3); see also Maier v. Commissioner, 154 F.3d 913, 914 (9th Cir. 1998).

In the area of daily living, the ALJ found only a "mild limitation."  AR at 13.  He noted that Plaintiff "lives alone, prepares simple meals, does household chores, does laundry, takes care of her personal needs, takes care of her cat, drives a car, shops for groceries and supplies, and gardens."  Id. With respect to social functioning, the ALJ found "no limitation."  Id.  In support, he wrote that she attended her daughter's wedding in Las Vegas and found that she reported in December 2004 and September 2007, that she was self-employed as a psychologist working out of her house Id.

In the third area of functioning, concentration, persistence, and pace, the ALJ found a "mild limitation."  AR at 13. The ALJ noted that Plaintiff was able to drive from Bakersfield to Las Vegas

---

[6]Plaintiff alleges that this form was completed by the treating psychiatrist at the Truxton Clinic.  Defendant notes that the signature is illegible (as did the ALJ) and challenges Plaintiff's assertion that this document was prepared by a treating psychiatrist.  (Doc. 15 at 7); AR at 12.

9

to attend her daughter's wedding and reiterated that she worked out of the house as a psychologist. Id. Finally, the ALJ noted that Plaintiff "has experienced no episodes of decompensation which have been of extended duration." AR at 13.

Because he determined that Plaintiff had no more than a "mild" limitation in the first three areas of functioning, and no limitation in the fourth, the ALJ concluded that Plaintiff's depressive disorder was "nonsevere" at step two. AR at 13.; see 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation to do basic work activities.")

Upon review, the Court finds that many of the reasons proffered by the ALJ in making his step two determination are not supported by substantial evidence. For instance, the ALJ relied upon the fact that Plaintiff drove to Las Vegas in October 2008 to attend her daughter's wedding as evidence of her ability to maintain adequate concentration, persistence and pace. However, he ignored the evidence that Plaintiff did not drive to Las Vegas but simply rode in the car while her son drove. AR at 56-57.

Also, the ALJ relied on evidence of activities that pre-dated Plaintiff's claim of the onset of her depressive disorder in February 2008 as evidence of her capability to perform daily activities of living. In particular, the ALJ cited a "Functional Report - Adult" form completed by Plaintiff in November 2006. See AR at 147. However, the ALJ failed to explain, in light of testimony and medical records showing that Plaintiff's depressive disorder did not manifest itself until early 2008, how evidence of activities of daily living in 2006 determines the "severity" of that disorder. In addition, the activities identified by the ALJ to demonstrate that Plaintiff had only a "mild limitation" in this area are not necessarily incompatible with claims of disability. Webb, 433 F.3d at 688 ("'The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not have to be "utterly" incapacitated" in order to be disabled.'") Notably, Plaintiff's November 2006 functional report shows that her ability to engage in many of the activities outlined by Plaintiff was not unfettered. For instance, Plaintiff described spending most of

her time at home in her pajamas, that she drove only occasionally and had great difficulty taking care of herself and performing simple tasks related to personal care and housework.  See AR at 147-49.

The ALJ relied on evidence that Plaintiff maintained a home office to continue her work as a psychologist in 2004 and 2007.  AR at 13.  Without dispute, Plaintiff completed a hospital "pre-registration form" in September 2007 and a doctor's form in December 4, 2004, in which she admitted that she worked out of her home as a psychologist.[7]  However, Plaintiff denied that the forms were accurate and stated that she listed this incorrect information to preserve her "pride."  Id. at 54.  In any event, the Court notes that if Plaintiff had worked out of the home in 2004, this is not inconsistent with a claimed disability onset date of December 30, 2004.  Likewise, working in 2004 or 2007 does not demonstrate that her depression, which did not become disabling until 2008, was not severe.  Moreover, the ALJ's determination that Plaintiff worked in 2007 contradicts his earlier finding at step one that Plaintiff had not engaged in any substantial gainful activity after December 30, 2004.[8]  Id. at 12.

For all of these reasons, the Court concludes that the reasons cited by the ALJ in determining that Plaintiff functioned with either no or a mild limitation in three of the first four areas of functioning are not supported by substantial evidence in the record and, thus, cannot form a basis for either discounting the opinion expressed by her doctor in the mental RFC Assessment form or for concluding that her depressive disorder was "nonsevere" at step two.

On the other hand, the ALJ cited no findings or opinions from other treating, examining or non-examining sources to discount the opinion of the doctor who completed the March 2008 mental RFC Assessment.  Whether the doctor who completed the assessment form was a "treating" or "examining" source, in the absence of opinions from other sources, the ALJ may not discount the opinion absent "clear and convincing" reasons supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  This can be done by setting out a detailed and

---

[7] As noted, at the hearing, the ALJ noted that Plaintiff indicated that she worked out of the home on an "application" filed with "us."  AR at 54.  Plaintiff acknowledged this but it is not clear from the record what the "application" referenced by the ALJ is.  The DIB application in the record contains no such statements.  Id. at 97-98.

[8] As discussed below, the Court will remand this matter for further consideration.  Upon remand, the ALJ should address this inconsistency in his order.

11

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct. Id.

In discounting the doctor's opinion, the ALJ noted that in 2007 Plaintiff gave conflicting evidence as to the severity of her depression or "anxiety," and declined to be examined by an agency psychiatric consultant. Plaintiff did not deny this, but she testified that, being a psychologist, she was embarrassed to admit and did not believe that she might have a mental disorder. See AR at 51. She stated that she did not believe that she had such an impairment until she attempted suicide by overdose in early 2008. Id. at 52. She said that it was only at that point that she sought psychiatric treatment. Id. The ALJ failed to address this testimony or explain any basis for discounting it.

In addition, although the ALJ relied upon the November 2008 treatment note from the Truxtun Clinic which indicated that Plaintiff's condition had "improved", found review of the entirety of the treatment notes during 2008 provides a more "mixed" picture. For instance, while a few reports indicate improvement in Plaintiff's condition and/or in the effectiveness of her treatment, others demonstrated the contrary. In late September 2008, Plaintiff told the doctor that she was "not doing good." AR at 363. In October, she reported that her medications were not working. Id. at 361. In July, she reported that she was having a "lot of problems." Id. at 366. Under these circumstances, the ALJ's reliance on one treatment note while seeming to ignore the totality of the treatment record is not substantial evidence that Plaintiff demonstrated significant or marked improvement on a sustained basis. Lester, 81 F.3d at 833 ("Occasional symptom free periods - and even the sporadic ability to work - are not inconsistent with disability.")

In his brief, Defendant raises additional grounds to discount the psychiatrist's opinion. He contends that the doctor provided no clinical support for the opinion. In addition, Defendant argues that if Plaintiff's depression did not become severe until early 2008, she has not established that she suffers from a "severe" impairment that could be expected to last for the requisite twelve months. (See Doc. 15 at 6-7, 8); see 20 C.F.R. §§ 404.1505, 404.1520(a)(4)(ii). Both of these reasons may constitute a basis for discounting the opinion of a treating or examining doctor and concluding that

Plaintiff is not disabled. See Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751. However, the ALJ did not advance either rationale as a basis for rejecting the doctor's opinion or for finding that Plaintiff's depression was "nonsevere." See Ceguerra v. Secretary of Health and Human Services, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."); Barbato v. Commissioner, 923 F.Supp. 1273, 1276 n. 2 (C.D. Cal. 1996) ("the Commissioner's decision must stand or fall on the reasons set forth in the ALJ's decision as adopted by the Appeals council. 'If a decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand. And that is so even if [the Administration] can offer proper post hoc explanations for such unexplained conclusions.'")

In determining that the ALJ failed to provide a sufficient basis for discounting the treating doctor's opinion and for finding that Plaintiff's depression was "nonsevere," the Court is mindful that Plaintiff's threshold for establishing that her depression is "severe" at step two is less onerous than the showing she must make to establish that it is disabling at either step four or five. See Webb, 433 F.3d at 687; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (holding that even where the medical record paints an incomplete picture of an impairment, it may still pass the de minimis threshold for severity at step two). Moreover, at step two, in particular, the ALJ has a duty to supplement the record if the evidence is ambiguous. See Smolen, 80 F.3d at 1290.

Here, ambiguities abound. While Plaintiff denied having a severe mental impairment in 2007, she testified that she realized that she had a significant problem only after she attempted suicide in early 2008. Medical records show that she was not diagnosed with major depressive disorder until February 2008. AR at 378. Records indicate also that she was treated on a monthly or even more frequent basis throughout 2008 until the time of the administrative hearing. See id. at 360-78. In March 2008, shortly after she was diagnosed and began her treatment at the Truxtun Clinic, a mental RFC Assessment found that Plaintiff had "marked" limitations in several areas of functioning relevant to her ability to work. Although, as noted, the signature on this document is illegible, Plaintiff insists that it was completed by a treating psychiatrist at the Truxtun Clinic. Yet, the ALJ took no steps to clarify any of these "ambiguities," or seek supplementation of the medical

record on the specific question of Plaintiff's depression by seeking a consultative mental examination.[9]  Therefore, the ALJ erred.

### 2. Remand for further proceedings is appropriate

Plaintiff contends that because the ALJ failed to articulate clear and convincing reasons for rejecting her treating psychiatrist's, the opinion should be credited as true and the matter remanded only for an award of benefits.  (Doc. 14 at 11).

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate repayment of benefits is within the discretion of the district court.  Harman v. Apfel, 211 F.3 1172, 1178 (9th Cir. 2000).  When a court reverses an administrative agency determination, the proper course, except in rare instances, is to remand to the agency for additional investigation or explanation.  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1988).

In Smolen, the Court stated that "*where the record is fully developed . . . . we have credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made*, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." 80 F.3d at 1292. (Emphasis added).   Noting that the ALJ had improperly rejected not just the opinions of physicians, but also Plaintiff's own symptom testimony and the testimony of lay witnesses, the Smolen Court concluded that the record was fully developed and "a finding of disability is clearly required" and remanded for an award of benefits.  Id.

This case is distinguishable from Smolen.  Here, outstanding issues remain and the record is incomplete concerning the severity of Plaintiff's depressive disorder.  For example, although not

---

[9] Similarly, there appears to be no explanation for Plaintiff's testimony that she attempted suicide in 1996.  If the 2008 suicide attempt was a manifestation of her depressive disorder, it follows that her condition was known to her as early as 1996.  This seems to belie Plaintiff's claim that she was in denial about her mental health condition before her suicide attempt in February 2008.  AR at 51.

cited by the ALJ, the Court notes that the psychiatrist's opinion concerning "marked" limitations in several areas of functioning (expressed in a check-box form) cites no clinical or diagnostic testing for support. See Magallanes, 881 F.2d at 751 (finding that a brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason for rejecting a treating physician's conclusion); see also Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) (same). In fact, the record is devoid of any evidence that any doctor, treating or otherwise, has performed a mental status examination of Plaintiff. Plaintiff herself frustrated an agency attempt to do this in 2007, claiming at that time that she suffered from no mental impairment that prevented her from working.

In addition, the treatment notes from the Truxtun Clinic, the only other medical evidence in the record supporting Plaintiff's claim of major depressive disorder, appear to be based entirely on Plaintiff's own subjective symptom testimony. See AR at 360-78; Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002) (holding that an ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints). However, the ALJ determined that Plaintiff's symptom testimony was "not credible" to the extent it was inconsistent with his RFC finding. AR at 13. Plaintiff has not challenged this determination on appeal. In light of this finding and Plaintiff's decision not to contest it, a treating doctor's reliance on Plaintiff's discredited symptom testimony is problematical. See Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion); Tonapetyan v. Halter, 242 F.3d 1142, 1149 (9th Cir. 2001) (same).

Because additional issues remain to be addressed with respect to the severity of Plaintiff's depressive disorder and because it is not clear that an award of benefits to Plaintiff should result after these additional issues are addressed, the Court will order the matter remanded for further proceedings. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (the decision to remand for further proceedings or simply award benefits is within the discretion of the court). On remand, the ALJ may wish to consider whether supplementation of the medical record with respect to Plaintiff's depressive disorder is appropriate. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)

1  ("Remand for further administrative proceedings is appropriate if enhancement of the record would
2  be useful.").

## **CONCLUSION**

Based on the foregoing, this matter is HEREBY REMANDED for further proceedings consistent with this decision.  The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated:  **September 7, 2010**                    **/s/ Jennifer L. Thurston**
                                                 UNITED STATES MAGISTRATE JUDGE